UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACI TAJUAN PINKETT,

       Plaintiff,          CIVIL ACTION NO. 15-cv-12226

  v.

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]

    Plaintiff Staci Tajuan Pinkett seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 16).  Plaintiff also submitted a reply brief in support of her Motion for Summary Judgment.  (Docket no. 17.)  With consent of the parties, this case has been referred to the undersigned for final judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Docket no. 14.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

### I.    PROCEDURAL HISTORY

    Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 16, 2008; Administrative Law Judge (ALJ) Drew A. Swank issued an

unfavorable decision with regard to that application on December 14, 2010. (TR 185-94.) Plaintiff then protectively filed an application for supplemental security income on June 8, 2011, and an application for a period of disability and disability insurance benefits on April 16, 2012. (TR 232-33, 280-92.) In both applications, Plaintiff alleges disability beginning December 15, 2010, due to hypertension, a herniated disc, depression, coronary disease, diabetes, obesity, and sleep apnea. (TR 106, 309.) The Social Security Administration denied Plaintiff's claims on February 27, 2013. (TR 204-33.) Subsequently, at Plaintiff's request, ALJ Jerome B. Blum held a hearing on January 27, 2014. (TR 155-81, 256.) In a May 2, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work as an administrative assistant and an office manager. (TR 106-14.) Plaintiff then requested a review of the ALJ's decision by the Appeals Council, which was denied on April 20, 2015. (TR 1-6, 87-88.) Therefore, the ALJ's decision became the final decision of the Commissioner, and Plaintiff commenced this action for judicial review. The parties then filed the instant Motions for Summary Judgment.

## II. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 13 at 9-14), Defendant (docket no. 16 at 6-13), and the ALJ (TR 110-13) each set out a detailed, factual recitation with regard to Plaintiff's medical record and hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate these factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Opinion and Order.

## III.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012; that she had not engaged in substantial gainful activity since the alleged onset date of December 15, 2010; and that she suffered from the following severe impairments: obesity, diabetes mellitus, obstructive sleep apnea, hypertension, and history of coronary artery disease/non-ST elevation myocardial infarction status post cardiac catheterization and stenting. (TR 107.)  The ALJ stated that this combination of impairments caused significant limitation in Plaintiff's ability to perform basic work activities. (TR 109.)  The ALJ also found that Plaintiff suffered from non-severe degenerative disc disease and that Plaintiff's medically determinable mental impairment of depression did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe.  (TR 109.)

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 110.)  The ALJ then determined that Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  (TR 110-13.)  Subsequently, in reliance on the vocational expert's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as an administrative assistant and an office manager.  (TR 113.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from December 15, 2010, through the date of the decision.  (TR 108, 114.)

## IV. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richarson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d ay 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Eckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id*. at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id*. (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g).) Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174.)

Plaintiff asserts that this matter should be reversed or remanded because (1) the record evidence does not support the ALJ's finding that Plaintiff has the RFC to perform sedentary work; and (2) the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician and erred in assigning no weight to the opinion of Plaintiff's treating therapist. (Docket no. 13 at 15-23.) Defendant argues, among other things, that "the ALJ reasonably found that Plaintiff, already limited to sedentary work based on the RFC finding in the prior decision, had not met her burden to provide new and material evidence of any worsening in her impairments to justify a more limited RFC." (Docket no. 16 at 19.)

### 1. The ALJ's Application of the Res Judicata Doctrine

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that social-security claimants and the Commissioner are barred by principles of res judicata from relitigating issues that have previously been determined. 126 F.3d 837 (6th Cir. 1997). The Commissioner is bound by the principles of res judicata unless there is new and material evidence of changed circumstances. *Id*. at 842; Acquiescence Ruling 98-3(6), 63 FR 29770-01, 1998 WL 274051 (Soc. Sec. Admin. June 1, 1998); Acquiescence Ruling 98-4(6), 63 FR 29771-01, 1998 WL 274052 (Soc. Sec. Admin. June 1, 1998). Where a claimant who has previously been

6

adjudicated "not disabled" seeks to avoid application of res judicata, he must provide proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *Vesey v. Comm'r of Soc. Sec.*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012) (citations omitted).

On December 14, 2010, Plaintiff was found "not disabled" by ALJ Drew A. Swank, who determined that Plaintiff suffered from the severe impairments of obesity, diabetes mellitus, obstructive sleep apnea, hypertension, and history of coronary artery disease/non-ST elevation myocardial infarction status post cardiac catheterization and stenting. (TR 185-94.) He further found that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (TR 189-93.)

Thus, ALJ Blum was bound by this determination unless he found new and material evidence of changed circumstances. Noting his responsibility under Acquiescence Rulings 98-3(6) and 98-4(6), ALJ Blum found that the record did not demonstrate deterioration in Plaintiff's condition since ALJ Swank's decision, and he therefore found the prior decision to be binding and adopted it in full. (TR 106, 110.) The ALJ supported this finding by pointing out that the new medical evidence from the period since the prior decision did not establish any change in Plaintiff's obesity, diabetes mellitus, obstructive sleep apnea, or hypertension. (TR 111.) The ALJ also noted that the prior decision accounted for Plaintiff's chest pain given her history of coronary artery disease. (TR 111.) Next, the ALJ discussed the treatment that Plaintiff had received for her back pain since the prior decision, and he concluded that Plaintiff's back condition "has not been shown to cause more than a mild interference in [her] ability to work and does not cause limitations inconsistent with sedentary work;" the ALJ further noted that this finding was consistent with the prior decision. (TR 111.) The ALJ also discussed the mental

health treatment that Plaintiff had undergone since the prior decision and found that there was no evidence to support any change in Plaintiff's mental health condition since the prior decision. (TR 112.) In reaching this determination, the ALJ reasoned that Plaintiff's mental health records indicated that she had experienced her symptoms for many years dating back to the time when she was performing skilled work; that there had been no aggravating circumstance related to treatment since the prior decision; and that Plaintiff seemingly began treating for her mental health in an effort to obtain disability benefits, where her treatment records noted "work on getting SSI and Medicaid" as a treatment goal. (TR 112.)

Plaintiff has failed to point to any evidence or set forth any argument with regard to whether or how her condition has worsened since the prior decision or why *res judicata* should not apply in this matter. In fact, Plaintiff does not address *res judicata, Drummond*, or the Acquiescence Rulings at any point in her Motion for Summary Judgment or the brief in support. Plaintiff does acknowledge the ALJ's assertion that there is no evidence to support any change in her mental health since the prior decision (docket no. 13 at 19), but Plaintiff presents no evidence or argument to the contrary.

The closest that Plaintiff comes to addressing this issue is in her Reply to Defendant's Motion for Summary Judgment. (Docket no. 17.) Plaintiff structured her reply brief to mirror the argument section of Defendant's Motion for Summary Judgment by using headings virtually identical to those of Defendant. For example, one heading in the argument section of Defendant's brief states, "Plaintiff has not demonstrated that her physical RFC has worsened in comparison to her condition in December 2010." (Docket no. 16 at 17.) Plaintiff uses the same heading in her reply brief but removes the word "not" so that it states, "Plaintiff has demonstrated that her physical RFC has worsened in comparison to her condition in December

8

2010." (Docket no. 17 at 1.) Beneath this heading, Plaintiff states that she stands by the evidence proffered in her brief in support of her Motion for Summary Judgment. (*Id.*) Plaintiff, however, does not further develop this conclusory statement. The Court is not obligated to address perfunctory arguments or develop them on Plaintiff's behalf, and it declines to do so here. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

Accordingly, Plaintiff has failed to demonstrate that her condition has worsened since the date of the prior decision to such a degree that she is no longer capable of engaging in substantial gainful activity. The denial of Plaintiff's Motion is warranted on this basis alone. Nevertheless, the Court will address the arguments set forth by Plaintiff in her Motion, as some of them challenge the ALJ's reasoning cited above.

### 2. *The ALJ's Assessment of Plaintiff's RFC*

Plaintiff generally challenges the ALJ's determination that Plaintiff has the RFC to perform the full range of sedentary work. (Docket no. 13 at 15.) In doing so, Plaintiff specifically challenges the ALJ's findings, or lack thereof, on four distinct issues. (*Id*. at 15-21.)

#### a. <u>The ALJ's Assessment of Plaintiff's Activities of Daily Living</u>

First, Plaintiff argues that the ALJ erred in finding that Plaintiff has only a mild limitation in performing her activities of daily living (ADLs). (Docket no. 13 at 15-16.) To support this argument, Plaintiff cites the opinion of her treating therapist, Krystal LePoudre-Johnston, Limited License Master Social Worker (LLMSW), that Plaintiff had extreme restrictions of her activities of daily living and extreme difficulty in maintaining social functioning; that Plaintiff suffered from a complete inability to function independently outside the area of her home due to panic attacks; and that Plaintiff had deficiencies of concentration, persistence, or pace resulting

in frequent failure to complete tasks in a timely manner. (*Id*. (citing TR 1058).) Additionally, Plaintiff points out that in her function report, dated January 6, 2013, she reported being in constant pain and on medications that make her sleep and forget things, that she needed help getting dressed, got dizzy in the shower, needed help preparing food, and did not do house or yard work because it tired her out and caused severe pain. (*Id*. at 16 (citing TR 328-31).) Plaintiff claims that the evidence cited above shows that her activities of daily living are greatly limited. (*Id.*)

The ALJ made the finding that Plaintiff had a mild limitation in performing activities of daily living as part of his determination that Plaintiff's mental impairments were non-severe at step two of the sequential evaluation process. (TR 109.) In making this finding, the ALJ reasoned that Plaintiff is able to handle all of her self-care requirements, citing Plaintiff's medical record of her December 12, 2011 appointment at the Mary Washington Heart Failure Clinic, in which physician's assistant Elisa Carter assessed that Plaintiff could "perform all of her ADLs without difficulty, but ha[d] to do so slowly and with care due to her lower back pain. (TR 109 (citing TR 437).) The ALJ continued to rely on this objective medical evidence in formulating Plaintiff's RFC, particularly in evaluating Plaintiff's back condition and in assigning little weight to Plaintiff's credibility. (TR 111, 113.) The ALJ's reliance on this evidence was not improper.

In making this argument, Plaintiff essentially points to evidence in the record that could support a contrary determination with regard to the severity of her limitation in performing ADLs and seemingly invites the Court to reweigh the evidence and substitute its own judgment for that of the ALJ; but it is not the Court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). While the evidence cited by Plaintiff tends to

support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's conclusion. Therefore, this issue falls within the ALJ's zone of choice, and Plaintiff's Motion is denied with regard to this issue.

b.     The ALJ's Assessment of Plaintiff's Back Condition

Plaintiff's subsequent argument suffers from the same fatal flaw. Plaintiff argues that the ALJ erred in finding that her back condition had not been shown to cause more than a mild interference in her ability to work. (Docket no. 13 at 16-17.) Plaintiff then sets forth record evidence that supports her position. (*Id*.) For example, Plaintiff points out that on December 29, 2011, Timothy Cannon, M.D. noted that Plaintiff had a history of severe disc disease (*Id*. at 16 (citing TR 999).) She also points out that a September 12, 2011 MRI of her lumbar spine showed disc herniation impinging on the nerve root.[1] (*Id*. (citing TR 580).) Plaintiff adds that she was hospitalized for her back pain a few months later. (*Id*. at 17.) Additionally, Plaintiff cites to her hearing testimony that her back pain registered at an eight to nine on a scale of one to ten and that it required her to lie down and elevate her feet for seven to eight hours a day. (*Id*. (citing TR 166-67).) Plaintiff further cites the opinion of her primary care physician, Shadiqul Hoque, M.D., who opined that Plaintiff suffered from severe cervical and lumbar pain, could stand for less than fifteen minutes and sit for thirty minutes, needed to change position more than once every two hours, and could work for fifteen minutes per day, among other things. (*Id*. (citing TR 1064).)

A review of the ALJ's decision reveals that the ALJ considered the record evidence cited by Plaintiff and even cited to some of it in reaching his conclusion regarding Plaintiff's back

---

[1] Plaintiff argues that the ALJ "diminished" the results of the MRI, presumably by stating in his decision that the results "revealed [a] L5-S1 small right paracentral disc herniation impinging upon the right S1 nerve root. The MRI also revealed mild degenerative change of the facets." (Docket no. 13 at 16 (citing TR 111, 580).) But a review of the MRI report reveals that the ALJ recited the MRI results in his decision almost word for word. Plaintiff's argument lacks merit.

11

condition. (TR 110-11.) But in reaching his determination that Plaintiff's back condition had not been known to cause more than a mild interference in her ability to work, the ALJ relied upon substantial evidence contrary to Plaintiff's position, and he supported his determination with several citations to the record. (TR 111.) For example, the ALJ noted that despite Plaintiff's ongoing back pain, she was able to perform all of her activities of daily living without difficulty. (TR 111 (citing TR 437).) He reasoned that the results of an August 18, 2011 x-ray of Plaintiff's spine noted that Plaintiff's back pain was unexplained. (TR 111 (citing TR 429).) The ALJ also cited the results of Plaintiff's September 12, 2011 MRI: "[a] L5-S1 small right paracentral disc herniation impinging upon the right S1 nerve root" and a "mild degenerative change of the facets." (TR 111 (citing TR 580).) The ALJ further pointed out that on June 25, 2012, Plaintiff rated her pain level at a three to five out of ten and that a July 14, 2012 x-ray of Plaintiff's lumbar spine revealed no acute osseous abnormality. (TR 111 (citing TR 392, 425).) In this instance, there is substantial evidence to support the ALJ's finding that Plaintiff's "back condition has not been shown to cause more than a mild interference in [her] ability to work and does not cause limitations inconsistent with sedentary work." (*See* TR 111.) Again, where there is substantial evidence to support both Plaintiff's and the ALJ's positions, the issue falls within the ALJ's zone of choice. Accordingly, Plaintiff's argument fails with regard to the ALJ's assessment of Plaintiff's back condition.

        c.      <u>The ALJ's Assessment of Plaintiff's Mental Health</u>

Next, Plaintiff argues that the ALJ inaccurately addressed Plaintiff's mental condition. (Docket no. 13 at 17-20.) In doing so, Plaintiff takes issue with the ALJ's statement that [o]n October 16, 2013, the claimant indicated that she had less panic attacks since her medications were increased *and she was feeling happy*." (*Id.* at 17-18 (citing TR 112 (citing TR 1092-1101)

12

(emphasis added)).) Plaintiff argues that there is no indication in the medical records cited by the ALJ that she was "feeling happy," and that the records indicate quite the opposite – that Plaintiff was experiencing hopelessness, helplessness, crying spells and suicidal ideations. (*Id*. at 18.) In fact, "feeling happy" is listed as one of the goals of Plaintiff's mental health treatment. (TR 1101.) Defendant concedes the ALJ's error in this instance (docket no. 16 at 23-24), and the Court agrees that the ALJ's interpretation of this portion of Plaintiff's medical records is erroneous. The Court finds, however, that this error, standing alone, does not warrant remand.

Plaintiff also argues that "the ALJ diminishes the fact that the plaintiff states that she has been having less panic attacks since her medication was increased." (Docket no. 13 at 18.) Plaintiff's argument is counterintuitive as written but becomes understandable upon considering Plaintiff's subsequent argument that even though her panic attacks may be less frequent, she is still experiencing them every day. (*Id*.) Apparently, Plaintiff argues that the ALJ diminished the fact that Plaintiff experiences panic attacks by considering Plaintiff's statement to her mental health provider that her panic attacks decreased with increased medication (*see* TR 1092) and relying upon that statement in formulating Plaintiff's RFC. Plaintiff's argument lacks merit; the ALJ's consideration of and reliance upon this objective medical evidence was appropriate.

Additionally, Plaintiff takes issue with the ALJ's finding that Plaintiff seemingly began receiving mental health treatment in an effort to obtain social security benefits because her treating records indicated that one of the goals of treatment was for Plaintiff to work on getting SSI and Medicaid. (Docket no. 13 at 19, 20 (citing TR 112 (citing TR 1082)).) Plaintiff argues that the underlying reason for that goal is because she is disabled and unable to work and that the goal was set as part of her standard mental health treatment. (*Id*. at 20.) As Defendant points out, however, the ALJ's interpretation of Plaintiff's treatment goals and his reliance upon that

interpretation in discounting the severity of Plaintiff's mental health condition is not erroneous under Sixth Circuit precedent. (Docket no. 16 at 24-25 (citing *Covucci v. Apfel*, 31 F. App'x 909, 912-13 (6th Cir. 2002)).) Accordingly, Plaintiff's argument fails with regard to this issue.[2] After a careful review of the record, including the treatment notes cited by Plaintiff, the Court finds that the ALJ's determination that Plaintiff's mental health conditions are non-severe and that they had not changed since the prior decision is supported by substantial evidence.

### d. The ALJ's Assessment of Plaintiff's Leg Pain, Swelling, Numbness, and Need to Elevate her Feet

Finally, Plaintiff claims that the ALJ failed to address Plaintiff's leg pain, swelling, numbness, and need to frequently elevate her feet for extended periods of time. (Docket no. 13 at 21.) Plaintiff is partially incorrect. The ALJ specifically acknowledged Plaintiff's testimony that her back pain requires her to lie down and elevate her feet for seven to eight hours a day and that she also experiences swelling of the feet. (TR 111.) The ALJ also found Plaintiff's testimony to be incredible because the treatment records and examination reports did not mention such a need to lie down and elevate her feet. (TR 113.) Additionally, the ALJ acknowledged Dr. Hoque's indication that Plaintiff suffered from Type II diabetes with neuropathy. (TR 111.) Plaintiff is correct, however, that the ALJ did not mention her leg pain. But his failure to do so does not constitute reversible error, as an ALJ need not discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted). Plaintiff's argument fails with regard to this issue.

---

[2] Plaintiff also argues that the prior ALJ erred in considering Plaintiff's testimony that she could not afford mental health treatment. (Docket no. 13 at 19.) The prior ALJ's decision is not under review in the instant appeal; thus, the Court will not consider Plaintiff's argument in this regard.

### 3. The ALJ's Assessment of the Medical Opinion Evidence

#### a. Plaintiff's Treating Physician

Plaintiff alleges that the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of plaintiff's treating physician. (Docket no. 13 at 21-22.) Plaintiff does not name the treating physician to whom she refers or discuss his or her opinion or the weight assigned to the opinion by the ALJ; rather, the focal point of Plaintiff's argument is the weight that the ALJ assigned to the doctors employed by the State Disability Determination Services, Daniel Blake, Ph.D. and Muhammad Khalid, M.D. Specifically, Plaintiff alleges that the ALJ erred in according more weight to their opinions than those of her treating physician where neither of them spoke with her or examined her, and they did not review her entire medical record. Plaintiff expounds that at the time they reviewed her medical record, there were only five exhibits in the record as compared to the fifteen exhibits, which included four hundred additional pages of medical records, at the time of the ALJ's decision.

"An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379–80 (6th Cir. 2013)). As discussed above, Plaintiff does not name her treating physician or address his opinion in relation to this argument; nevertheless, seeing as the only physician's opinion in the record is that of Dr. Hoque, and Plaintiff refers to Dr. Hoque as one of her treating physicians in her brief (*see* docket no. 13 at 14), the Court will address his opinion here.

The nature and extent of Dr. Hoque's treatment of Plaintiff is unclear; however, on January 14, 2014, Dr. Hoque completed three medical statements regarding Plaintiff's diabetes,

15

coronary artery disease, and cervical and lumbar pain. (TR 1062-64.) In each of the statements, Dr. Hoque opined that Plaintiff could work fifteen minutes per day, stand for less than fifteen minutes at a time, sit for thirty minutes at a time, lift five pounds on an occasional basis but not at all frequently, and occasionally balance. The ALJ discussed Dr. Hoque's opinion in his decision and assigned it little weight because it was inconsistent with the evidence as a whole, reasoning further that there was no evidence suggesting Plaintiff's inability to perform the exertional requirements of sedentary work, let alone the ability to work no more than fifteen minutes daily. (TR 111-12.) Plaintiff does not challenge the ALJ's assessment of Dr. Hoque's opinion until her reply brief, in response to Defendant's argument that the ALJ"s assessment was proper. (Docket no. 17 at 2.) Plaintiff argues that Dr. Hoque's opinions are consistent with her testimony and the medical records, except for Dr. Khalid's opinion, which was only based on one third of the medical exhibits. (*Id*.) Plaintiff, however, does not develop this conclusory argument or support it with citations to the record evidence. Plaintiff does not sufficiently assert error with regard to the ALJ's assessment of Dr. Hoque's opinion, and the Court finds none. The ALJ's decision to discount Plaintiff's treating physician's opinion on the basis that it is inconsistent with the record evidence is supported by substantial evidence. Accordingly, under *Dyer,* Plaintiff's argument that the ALJ erred by crediting the non-examining physician's opinion over that of her treating physician, fails.

          b.      <u>Plaintiff's Treating Therapist</u>

Finally, Plaintiff alleges that the ALJ erred in giving no weight to the opinion of her treating therapist, Krystal LePoudre-Johnston. (Docket no. 13 at 22-23.) According to Plaintiff's medical records, Ms. LePoudre-Johnston, a Limited License Master Social Worker with Development Centers, Inc., met with Plaintiff twice in late 2013. (TR 1080-86, 1092-

16

1101.) On January 9, 2014, Ms. LePoudre-Johnston completed a Medical Statement Concerning Depression with Anxiety, OCT, PTSD or Panic Disorder with regard to Plaintiff's impairments, in which she opined that Plaintiff had an extreme restriction in activities of daily living, extreme difficulty in maintaining social functioning, deficiencies of concentration, persistence or pace, repeated episodes of deterioration or decomposition in work or work-like settings, and a complete inability to function independently outside the area of her home due to panic attacks. (TR 1058.) Ms. LePoudre-Johnston also opined, among other things, that Plaintiff's abilities to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms, were extremely impaired. (TR 1059.) Plaintiff argues that, "Krystal LePoudre-Johnston's medical statement should be given great weight because she has had regular appointments with the plaintiff to have personal knowledge of the plaintiff's consistent complaints of her symptoms, had been seeing the plaintiff on a regular basis for over a year, is a Limited License Master Social Worker, and her opinion was not only based on her interactions with the plaintiff, but evaluations and diagnoses from 'acceptable medical sources' that were apart [sic] of the treatment team members." (Docket no. 13 at 23.)

Limited License Master Social Workers are not "acceptable medical sources" under the Regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Opinions from sources that are not considered "acceptable medical sources" are important and should be evaluated when assessing the severity of an individual's impairments and the impact those impairments have on the individual's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2, *3 (Aug. 9, 2006). Nevertheless, the ALJ is not required to accord those

17

opinions any special weight or consideration as is required with the opinions of doctors. *Taylor v. Comm'r*, No. 11-46, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R § 404.1513(d)(1)). Social Security Ruling 06-03p states that there are certain factors an ALJ may weigh when reviewing opinions from non-acceptable medical sources, such as the nature and extent of the relationship between the source and the individual, how well the source explains the opinion, the source's specialty or area of expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion. 2006 WL 2329939, at *4-5.

Here, the ALJ assigned no weight to the opinions of Ms. LePoudre-Johnston because she was not an acceptable medical source and because her findings were inconsistent with the evidence of record. (TR 112.) Additionally, the ALJ reasoned that Ms. LePoudre-Johnston had extremely limited treatment history with Plaintiff and that she relied exclusively upon Plaintiff's subjective complaints. (TR 112.) The ALJ considered the nature and extent of Plaintiff's relationship with Ms. LePoudre-Johnston and the consistency of Ms. LePoudre-Johnston's opinion with the other record evidence. Since the ALJ was not required to accord Ms. LePoudre-Johnston's opinion any special weight, and because he considered certain factors, Plaintiff's argument with regard to the ALJ's assessment of Ms. LePoudre-Johnston's opinion fails.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [13] is **DENIED**, and Defendant's Motion for Summary Judgment [16] is **GRANTED**.


Dated: September 26, 2016         s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated: September 26, 2016       <u>s/ Lisa C. Bartlett</u>
                                              Case Manager